ZANETOS, APPELLEE, *v.* SPARKS, APPELLEE; BOLIN, APPELLANT.

(No. 83AP-508—Decided January 26, 1984.)

*Messrs. Denmead, Gerrity & Tsitouris* and *Mr. Chris C. Tsitouris,* for appellee Tom Zanetos.

*Mr. Robert Sexton,* for appellee Daniel E. Sparks.

*Mr. Roy E. Hopple,* for appellant Richard Bolin.

NORRIS, J. Defendant, Richard Bolin, appeals from a judgment of the trial court finding that he was not an assignee under a written lease but, rather, that he was a month-to-month tenant; that he had breached his month-to-month tenancy by a late payment of rent; and that the plaintiff was entitled to terminate Bolin's possession and collect delinquent rent.

On May 31, 1979, Risto Mitrevski leased real property to defendant, Daniel Sparks, for a term of five years ending on May 31, 1984, at a rental of $150 per month, due on the first day of each month. The lease included a thirty-day rental default clause, and a prohibition against assignment without written consent of the lessor.

Sparks operated a tavern on the premises and, in June 1981, sold the business to Bolin. As part of the sales transaction, a form was filed with the Ohio Department of Liquor Control signed by Mitrevski certifying that Bolin had "sole and exclusive tenancy rights" to the premises. Also filed was an "assignment or sublease of tenancy rights" form signed by Sparks and certifying that "tenancy rights" had been assigned to Bolin. At the bottom of the form, Mitrevski signed a "consent of realty owner" giving "consent to the above mentioned sublease."

After the sale, Bolin took possession of the premises and made timely monthly rental payments to Mitrevski's agent

through May 31, 1982. Bolin testified at trial that he spent between $8,000 and $9,000 improving the property. Mitrevski sold the property to plaintiff on June 9, 1982. On June 10, Mitrevski's rental agent, to whom Bolin had previously paid rent, sent a letter to Bolin advising him that:

"* * * [W]e would like to inform you that the building and lot have recently been sold by Mr. Mitrevski.

"The new owner will be contacting you in the near future and will inform you where to mail your rent payments at that time.

"Meanwhile, your June payment may be made to our office as usual."

Plaintiff testified that he first talked to Bolin on July 6 when he asked for the July rent. Bolin testified that on that occasion plaintiff also told him to make the June payment to Mitrevski's rental agent; plaintiff said he "probably" instructed Bolin to pay the June rent to the agent. Bolin's July 7 check for the June rent was received by the rental agent on July 9, and later was returned to Bolin uncashed. Bolin's July 7 check for the July rent was received by plaintiff several days later. On July 9, plaintiff served on Bolin notice to leave the premises, and a week later filed an action for restitution of possession of the premises and for back rent.

The trial court found that any attempted assignment of the lease from Sparks to Bolin was ineffective as in violation of the Statute of Frauds, and that Bolin was therefore a month-to-month tenant and had lost any right of tenancy by failure to pay his June rent on time. The trial court also dismissed Sparks as a party-defendant.

Defendant raises seven assignments of error:

"I. The court erred in finding that 'the actions of defendant Sparks constituted an attempted or oral assignment of his interests in the lease to the defendant Bolin in violation of the statute of frauds (Section 1335.04, Revised Code).'

"II. The court erred in failing to find that the plaintiff was not a proper party to this action and in failing to find that the plaintff had no standing to raise the issue of the assignment of the lease by the defendant Sparks to the defendant Bolin or to raise the issue of the untimely payment by the defendant Bolin of the June, 1982 lease payment.

"III. The court nullified its judgment against the defendant Bolin by dismissing the defendant Sparks.

"IV. The court erred in finding that the defendant-appellant breached the terms of a tenancy by a late rental payment.

"V. The court erred in failing to find that the defendant Bolin was mislead [sic] by the previous owner's rental agent into making the June, 1982 payment late and that said rental agent's actions constituted an estoppel to the lateness of the payment or the court erred in failing to prevent an inequitable forfeiture of defendant Bolin's tenancy rights.

"VI. The court erred in awarding damages to the plaintiff in more than the amount prayed for.

"VII. The court erred in overruling defendant Bolin's motion for summary judgment."

Resolution of this appeal first turns on a determination of whether the lease was validly assigned from Sparks to Bolin.

R.C. 1335.04 provides as follows:

"No lease * * * shall be assigned * * * except by * * * note in writing, signed by the party assigning * * * it * * *."

The form filed with the Department of Liquor Control clearly complied with the statute — it was in writing and signed by Sparks. And, Mitrevski's written consent to the "sublease" complies with the requirement of the lease that Mitrevski consent in writing to any assignment of the lease. In addition, Bolin's actually taking possession of the premises and paying the rent required by the lease to the lessor amounted to part performance under the

statute and to a waiver of any complaint Mitrevski may have had concerning consent to the assignment.

Accordingly, Bolin was in possession under a written lease and his interest in that lease could not be forfeited so easily as could his tenancy interest if it were dependent upon a mere month-to-month tenancy.

Clauses in written leases which give lessors the right to declare forfeiture of a lease for nonpayment of rent are valid. However, unless a lessee's conduct is willful or malicious, or if compensation for the breach cannot be made due to the lessor, a court exercising its equity powers will grant the lessee relief from forfeiture. The forfeiture clause for nonpayment of rent is not strictly construed, rather, it is viewed as merely security for the payment of rent. The courts will balance the equities of the case and relieve the forfeiture where the equities favor the lessee. See *Peppe* v. *Knoepp* (1956), 103 Ohio App. 223 [3 O.O.2d 281].

Numerous Ohio cases involving lease agreements stand for the proposition that equity abhors a forfeiture and that a forfeiture will not be declared where the equities of the parties can be adjusted. See *Gould* v. *Hyatt* (App. 1926), 4 Ohio Law Abs. 468; *Prosser* v. *Kruger* (App. 1923), 1 Ohio Law Abs. 348; *Dietrich* v. *Ezra Smith Co.* (1920), 12 Ohio App. 243.

From the circumstances of this case, it is clear that the equities favored Bolin, in view of his history of timely payment, his substantial improvement of the premises, the plaintiff's failure to timely notify Bolin of the sale and advise him to whom payments should be made, Bolin's tender of payment immediately upon his first conversation with plaintiff, the tender having been only nine days late, and the fact that the payment of the rent would adequately compensate plaintiff for any technical breach of the terms of the lease. See *Southern Hotel Co.* v. *Miscott,*

*Inc.* (1975), 44 Ohio App. 2d 217 [73 O.O.2d 235].

In his testimony, Bolin indicated that he was uncertain as to whom he should pay the June rent, and wanted to see the new owner before he made that payment. That reluctance was both understandable and justified, in view of the fact that the only notice he had received concerning the June rent was from the former owner's agent. The written notice did not name the new owner; it only advised Bolin that the new owner would contact him in the near future. The new owner did not do so — he waited nearly a month. Under the circumstances, Bolin was entitled to withhold his June rent until plaintiff advised him to whom payments should be made; the burden was on plaintiff to give proper notice. Bolin was not required to assume the risk of paying June rent, part of which apparently belonged to plaintiff, to a third party without authority from plaintiff.

Accordingly, the first and fourth assignments of error are sustained and the fifth assignment of error is sustained to the extent discussed above.

Because plaintiff had an interest in receiving a portion of the June rent, the second assignment of error is overruled. In view of the rulings on the first, fourth, and fifth assignments of error, even if the trial court had erred in dismissing Sparks, such a dismissal did not prejudice Bolin's cause. Accordingly, the third assignment of error is overruled. Similarly, we find no prejudice to Bolin in the trial court's failure to grant his motion for summary judgment and the seventh assignment of error is overruled. The sixth assignment of error is sustained to the extent that the judgment exceeds the prayer of plaintiff's complaint by $45.

The judgment of the trial court is reversed in part and affirmed in part, and this cause is remanded to the trial court with instructions to vacate the parts of its judgment forfeiting defendant Bolin's interest in the lease and granting plaintiff

possession of the premises, and to reduce the amount of the judgment by $45.

*Judgment reversed in part, affirmed in part and cause remanded with instructions.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.